## James B. Wilson, Appellee, v. Baltimore & Ohio Railroad Company, Appellant.

### Gen. No. 20,956.

1. MASTER AND SERVANT, § 150*—*when insufficient clearance between tracks cause of injury to employee.* Plaintiff, conductor of a freight train standing on the main line of a railroad, in order to shift a car of the train to an adjacent side track, caused an engine attached to the train to back slowly down the side track, plaintiff standing on the footboard of the tender. Stepping off the footboard while the engine was in motion, when about opposite the car to be shifted, plaintiff was injured in some manner. The side track was so constructed as to leave a clearance of but about two feet between cars standing on it and any cars which might be standing on the main line. *Held,* where plaintiff after the accident was found lying in front of the engine, the obvious cause of the accident was the faulty construction of the side track, in being laid too close to the main line, causing plaintiff, as he stepped off the footboard, to be struck by one of the cars of the train, and either thrown under the engine, or squeezed between it and one of the cars of the train.

2. MASTER AND SERVANT, § 438*—*when employee excused from failure to notice conditions.* Where plaintiff, an experienced freight conductor, was injured at night when he stepped off the footboard of an engine which was slowly backing down a side track adjacent to the main line, on which stood plaintiff's freight train, where the cause of the injury was the faulty construction of the side track, in being built so close to the main line as not to afford a safe clearance when there were cars standing on both tracks, and which caused plaintiff to be hit by a car of the train as he stepped off the footboard, held that the facts showed a reasonable excuse for the failure of plaintiff to notice the conditions, though he carried a lantern, for the reason that plaintiff had no reason to anticipate the conditions, which were unusual, and because the darkness prevented his observing them.

3. MASTER AND SERVANT, § 150*—*when failure to allow sufficient clearance between tracks is negligence.* In an action against a railroad company to recover for personal injuries, where the cause of the injury was the construction of a side track so close to the main line that a clearance of but two feet was afforded between cars standing on the side track and others standing on the main line,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

evidence *held* to warrant the jury in finding defendant liable, for the reason that in constructing said tracks so as not to afford a clearance sufficient to enable employees to pass with reasonable safety between cars on the adjacent tracks, defendant was negligent.

4. MASTER AND SERVANT, § 693*—*when evidence sufficient to show excessive continuous service.* In an action by a freight conductor to recover for personal injuries, claimed by him to have been caused in part by exhaustion due to continuous service for seventeen hours and twenty-five minutes, in violation of the Federal statute, where the evidence as to the extent of such continuous service was conflicting, and where plaintiff's testimony was sufficient to prove a violation of the statute, *held* that the jury were warranted in believing plaintiff's testimony, there being sufficient evidence that the continuous service testified to would produce the exhaustion claimed.

5. DAMAGES, § 111*—*when verdict not excessive.* Where an experienced freight conductor, twenty-nine years of age, in good health and strength, earning on an average $125 a month prior to an injury, is permanently injured, so as to make him a helpless cripple, and to cause him to suffer constant and intense pain, a verdict of $45,000, though larger than usual, *held* not excessive, there being no convincing reason for such holding, and it appearing that the verdict was the result of serious and fair-minded consideration by the jury, whose sympathies were not unduly moved by appeals of counsel.

Appeal from the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed October 5, 1915. Rehearing denied October 14, 1915. *Certiorari* denied by Supreme Court (making opinion final).

CALHOUN, LYFORD & SHEEAN, for appellant; CHARLES D. CLARK, of counsel.

MORSE IVES, WEYMOUTH KIRKLAND and C. E. STENNING, for appellee.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff, a conductor of one of defendant's freight trains, was severely injured while in the discharge of his duties. Upon suit alleging negligence of the de-

fendant, he had judgment for $45,000, from which defendant has appealed.

Two grounds of liability are presented: (1) Negligent construction of defendant's tracks, the main and side tracks being placed unusually close to each other; and (2) defendant, engaged in interstate commerce, violated the Federal statute by requiring plaintiff to be on duty for a longer period than sixteen consecutive hours.

Defendant has a line running southerly and easterly from Cleveland, Ohio, through Akron, where it joins what may be called the "through line" from Chicago to Pittsburg. Some distance westerly of Akron on this through line is Chicago Junction, and easterly of Akron is Newcastle Junction, and the division between these points is called the Newcastle division. The line from Akron north to Cleveland is called the Cleveland division. Plaintiff usually worked on the Newcastle division. The accident occurred at Peninsula, a station on the Cleveland division a few miles north of Akron. On the Newcastle division, plaintiff says, the usual distance between cars standing on parallel tracks was about four feet or more, and that he had never noticed this space to be less than three and one-half feet in width. At Peninsula, on the Cleveland division, is a single main track and two sidings east of it. The Ohio floods in the spring of 1913 had washed out the ballast from these tracks and they had been relaid, but so close together that there would be a clearance of only one or two feet between cars on parallel tracks. A brakeman testified that to pass between an engine on one track and a car on the other it was necessary to turn sideways. Plaintiff had not noticed the distance between cars on any division other than the Newcastle division. He had run as conductor on a train through Peninsula on only one trip, but had not been there after the flood and did not know anything about the nearness of the tracks to each other at Peninsula.

About two o'clock in the morning of August 23, 1913,

plaintiff was in charge of a train of forty cars arriving in Peninsula. There was a "hot box" on the east side of the eighth car from the caboose, and plaintiff undertook to set this car out of the train, and for that purpose ordered one of the engines hauling the train to back north on the side track parallel to the main line and along the east side of his train. He stood upon the footboard at the rear of the engine's tender and rode on the end of the footboard next to his train as the engine backed northerly on the siding towards the car with the "hot box." He carried a lantern, but on account of the darkness did not observe any unusual distance or lack of space between the engine and the train. Before the engine reached the car the power had been shut off and it was "drifting," that is, going about five or six miles an hour, or what is described as an ordinary walk. As the engine came opposite the car with the "hot box," plaintiff stepped off the footboard, apparently with the intention of uncoupling this car. The engineer saw plaintiff's lantern strike the car of the adjacent train and go out. Thinking there was something wrong he stopped the engine, and plaintiff was found lying just in front of the engine. Plaintiff has no recollection of what happened after he stepped from the footboard and did not regain consciousness for nearly three days.

The conclusion is not only reasonable but obvious, that when plaintiff stepped off his engine he was struck by the nearby car and either thrown under the engine or squeezed between it and the car. The faulty construction of the main line and the siding, with reference to the distance between them, was clearly the cause of the accident. A similar situation was characterized in the opinion in *Voorhees v. Lake Shore & M. S. Ry. Co.*, 193 Pa. St. 115, as a "dangerous man-trap." The defendant was negligent in permitting its tracks to be so close together that employees could not with reasonable safety pass between cars on adjacent tracks. Plaintiff was experienced and knew that the

usual clearance between cars was sufficient for him to step off in safety. He had no reason to think that the space at this point was any less than the usual distance, and the darkness furnished a reasonable excuse for his failure to notice the unusual conditions. The evidence as to negligent construction justified the verdict of the jury as to liability.

As we view this case it is hardly necessary to discuss at any length the evidence touching the question of the number of consecutive hours plaintiff was on duty prior to the accident. Whatever may be said as to the period of time commencing at 3:40 p. m. on August 19th, with reference to determining whether plaintiff was "on duty" while traveling "deadhead" to meet the train of which he was to take charge, and as to the period commencing at 3:15 p. m. on August 20th, there was submitted to the jury the question of fact as to the duration of the period of duty commencing at 4:35 p. m. August 21st. The trial court by instructions limited to this period any liability of defendant for violation of the Federal statute. There is disagreement among the witnesses as to when this period of employment ended. Plaintiff says it was at 10 a. m. on August 22nd; this would make the period of duty seventeen hours and twenty-five minutes. The defendant introduced evidence tending to show that the period ended at 8:45 a. m. We cannot say that the jury should not have believed plaintiff's version of the matter. Plaintiff sufficiently proved the violation of the statute as to this period, and there was sufficient evidence that this produced a condition of exhaustion that contributed to the accident.

There are no reversible errors in the instructions or rulings on evidence.

Are the damages excessive? Plaintiff was a young man twenty-nine years of age, in good health and of great strength and vigor. He was injured Saturday morning and was unconscious until the following Tuesday. His brain was injured, right arm amputated,

back broken, vertebrae out of alignment, cartilage between the vertebrae destroyed; ribs, left clavicle and nose were broken; muscles of the entire right side have since become atrophied; right side of body partially paralyzed; both legs paralyzed; and many other injuries. Plaintiff testified that he constantly suffers excruciating pains. His average earnings as a conductor before the injury were $125 per month. The verdict was for $45,000, which is for an amount larger than is usual in our courts. It cannot be said that it is excessive solely because it is large. The real question is, is it too great compensation to a young, strong man for the experience of being transformed violently into a permanent, helpless physical wreck, with the attendant pain and suffering, past, present and future; also his loss of earnings because of permanent disability? We do not find in the record any appeal by counsel which might have unduly moved the sympathies of the jury. The amount seems to have been arrived at as the result of serious and fair minded consideration. We are not disposed to say in this instance that our judgment is better as to the amount of compensation than is that of the jury. No convincing reason appears to warrant a conclusion that the amount is excessive.

For the reasons above indicated the judgment is affirmed.

*Affirmed.*